UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CLIFTON J PAPPION** | **CASE NO. 2:19-CV-01098** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **PHILLIPS 66 CO** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court are two Motions: (1) "Motion for Summary Judgment" (Doc. 121) filed by Plaintiff Clifton J. Pappion, and a (2) "Motion for Summary Judgment" (Doc. 122) filed by Defendant Phillips 66 Company ("Phillips 66").

## BACKGROUND[1]

Plaintiff was employed since May 1994 in operations at Phillips 66's Lake Charles Refinery ("LCR"); he was assigned to the Fluid Catalytic Cracking ("FCC") area/unit of the LCR.[2] Pappion received area specific training and underwent testing to qualify to work in various FCC jobs.[3]

In August 2002, Pappion qualified as a Top Operator,[4] which included writing permits during their assigned shift, check on jobs being completed on shift, ensure all shift operators complete log-ins, acts as a liaison between shift operators, STLs, and management.[5] To qualify as a Top Operator, operators were required to (1) participate in

---

[1] The Court will not rely on Plaintiff's factual statement as counsel for Plaintiff failed to cite to any evidence to support said statements.
[2] Defendant's exhibit B, Sona declaration ¶ 7; Defendant's exhibit A, Clifton Pappion deposition, pp. 91, 03, 99-100,105-108, 111 and att. exhibits 5 and 11.
[3] *Id.* pp. 111-119.
[4] Defendant's exhibit B, Sona declaration, ¶ 8; Defendant's exhibit A, Pappion deposition, p. 144.
[5] *Id.* p. 144-145.

certain training and testing, including addressing safety topics and procedures, operational procedures, and ensuring they have an understanding of their unit, (2) shadow a previously qualified Top Operator, (3) set standards of work, (4) participate in safety topics/discussions/trainings.[6]

From April 1, 2005, through July 9, 2008, Plaintiff took many leaves of absence for medical reasons and thus did not conduct any work at the LCR.[7] Due to his many extended leaves of absences, Plaintiff was required to go through refresher training and requalify[8] that included additional training on the console.[9] After Plaintiff's return to work in 2008, he had several additional leaves of absences, including another six month leave and other shorter leaves of absence.[10]

On or about April 4, 2013, Pappion filed a Charge of Discrimination ("2013 Charge") with the EEOC,[11] that alleged that he was discriminated against due to his race and that he was retaliated against in violation of Title VII.[12] In the 2013 Charge, Pappion alleged that on March 27, 2012 he was "demoted one seniority spot and lost [his] Christmas vacation…due to [him] being out on sick leave" in connection with Plaintiff's extended leave of absence in 2005-2008.[13]

During his employment, Plaintiff received formal disciplinary actions and had multiple attendance, performance, and/or other disciplinary issues during his

---

[6] *Id.* pp. 145-146 107-110, 168-170.
[7] Defendant's exhibit B, Sona declaration, ¶ 10; Defendant's exhibit A, pp. 179-198.
[8] *Id.*
[9] Defendant' exhibit A and att. exhibits 21, and 22.
[10] Defendant's exhibit B, Sona declaration, ¶ 10; Defendant's exhibit A, Pappion deposition, p. 230.
[11] Defendant's exhibit B, Sona declaration, ¶ 10; Defendant's exhibit A, Pappion deposition, p. 230.
[12] *Id.* p. 224 and att. exhibit 24.
[13] *Id.*

employment.[14] For example, Plaintiff was repeatedly issued formal discipline for violations of Phillips 66's applicable attendance policy.[15] He also had multiple instances of disciplinary issues that did not result in formal discipline being issued.[16]

In 2018, Phillips 66 had an opening for a shift team lead ("STL").[17] Plaintiff applied for the position, and he and a co-worker were granted interviews.[18] Three LCR people conducted the interviews using certain questions that could occur in the operations setting to test the candidates' aptitude in relevant areas.[19] Through the process, the interviewers assigned a score in connection with several categories of competencies/skills based on the interviews, including: Adaptability, Building Partnerships, Communications, Decision Making, WorkStandards, and Motivational Fit.[20]

The interviewers also provided additional notes to reflect the candidates' strengths and weaknesses based on the interview responses.[21] At the time of Plaintiff and his co-worker's interviews, it was the LCR's practice/procedure that the lower the score, the better.[22] Ultimately, the co-worker received a better score through the interview process and the interviewers believed he was a more qualified candidate for the STL Breaker

---

[14] Defendant's exhibit B, Sona declaration, ¶¶ 11-12, and att. exhibits 4 and 5.
[15] *Id.* ¶ 11 and att. exhibit 4.
[16] *Id.* ¶ 12 and att. exhibit 5.
[17] *Id.* ¶ 14.
[18] *Id.* ¶ 15, and att. exhibit A; Defendant's exhibit H, Ardoin declaration, ¶ 7; Defendant's exhibit D, Richard declaration ¶ 7, Defendant's exhibit C, Jimney Declaration, ¶ 7; Defendant's exhibit A, Pappion deposition, pp. 259, 262.
[19] Defendant's exhibit B, Sona declaration, ¶¶ 15-16; Defendant's exhibit 6, Ardoin declaration ¶ 6;
[20] Defendant's exhibit B, Sona declaration ¶ 16; Defendant's exhibit H, Ardion declaration, ¶ 6,; Defendant's exhibit D, Richard declaration ¶ 7; Defendant's exhibit C, Jimney declaration, ¶ 7.
[21] Defendant's exhibit B, Sona declaration ¶ 16; Defendant's exhibit H, Ardoin declaration ¶ 8; Defendant's exhibit D, Richard declaration ¶ 7; Defendant's exhibit C, Jimney declaration, ¶ 7.
[22] Defendant's exhibit B, Sona declaration ¶ 17; Defendant's exhibit H, Ardoin declaration ¶ 8; Defendant's D, Richard declaration ¶ 8; Defendant's exhibit C, Jimney ¶ 8.

position.[23] As such, the co-worker was given and accepted an offer for the STL Breaker position.[24]

Plaintiff filed an EEOC charge on June 24, 2019 alleging that he was discriminated against based on his race and that he was retaliated against in violation of Title VII for "filing [a] previous EEOC Charge in 2013" when he "was denied/overlooked for a promotion to a[an STL] position multiple times. ("2019 Charge").[25] The 2019 Charge identified November 1, 2018, as the earliest and latest dates the alleged discrimination took place.[26]

Plaintiff was issued a right to sue letter from the EEOC on July 2, 2019,[27] and filed suit on August 21, 2019, alleging that he had previously filed the 2013 Charge regarding the seniority issue and that "[d]espite an adjustment to his seniority status, Plaintiff has been denied promotions since that time, with persons having less experience being promoted over him."[28]

On June 18, 2021, Plaintiff's unit participated in a task that involved general house keeping and clean up at the Electro Static Precipitator ("ESP").[29] During the cleanup, Plaintiff was at the top of the 60 foot high ESP structure with co-workers when he threw

---

[23] Defendant's exhibit B, Sona declaration ¶ 17; Defendant's exhibit H, Ardoin declaration ¶ 8; Defendant's D, Richard declaration ¶ 8; Defendant's exhibit C, Jimney ¶ 8.
[24] Defendant's exhibit B, Sona declaration ¶ 17; Defendant's exhibit H, Ardoin declaration ¶ 8; Defendant's D, Richard declaration ¶ 8; Defendant's exhibit C, Jimney ¶ 8.
[25] Defendant's exhibit A, Pappion deposition pp. 293-298 and att. exhibit 30.
[26] *Id.* pp. 295-297 and att. exhibit 30.
[27] *Id.* pp. 307, 309 and att. exhibit 31.
[28] Complaint, ¶ par 7-8.
[29] Plaintiff refers to this event as a "trash bash." The clean up was to prepare for the hurricane season.

two, 2-foot by 3-foot dog ear covers over the rail without using any acceptable safety protocols.[30]

Plaintiff's supervisor, who was present during the incident verbally coached and voiced his concerns to Plaintiff regarding the severity of his actions and voiced his safety concerns.[31] Despite no action at the time by his supervisor, an investigation was initiated by Plaintiff's supervisor.

Between July 2, 2021, and July 8, 2021, investigators conducted several witness interviews, and collected written statements.[32] After the investigation, the decision makers issued Plaintiff a Final Warning accompanied by a three-day suspension. Plaintiff was also disqualified from the Top Operator position and required to train and refresh on all applicable jobs within the FCC progression.[33]

On December 1, 2021 Plaintiff filed a EEOC Charge (the "2021 Charge") alleging that he was discriminated against based on race and retaliated against for the safety violation.[34] The 2021 Charge identified July 12, 2021, as the earliest and latest dates the alleged discrimination took place.[35] The EEOC issued Plaintiff a right to sue letter on September 9, 2022, and he filed a Supplemental Complaint in this lawsuit alleging that

---

[30] Defendant's exhibit B, Sona declaration ¶¶ 18, 21 and att. exhibit 10; Defendant's exhibit A, Pappion deposition, pp. 346-349, 359-360.
[31] Defendant's exhibit F, McKlemurry declaration ¶ 12; Defendant's exhibit A, Pappion deposition, p. 349.
[32] Defendant's exhibit B, Sona Declaration, ¶ 21 and att. exhibit 10; Defendant's exhibit E, Holland declaration ¶ 6 and att. Exhibit 4.
[33] Defendant's exhibit B, Sona declaration ¶ 22-23 and att. exhibits 11, 12; Defendant's exhibit E, Holland declaration ¶ 9 and att. exhibit 6.
[34] Defendant's exhibit B, Sona declaration, ¶ 24; Defendant's exhibit E, Holland declaration, ¶ 10; Defendant's exhibit A, Pappion deposition, pp. 395-403.
[35] Defendant's exhibit A, Pappion deposition, p. 399 and att. exhibit 39.

Phillips 66 continued to discriminate against him by demoting him for throwing items from a structure.[36]

## **SUMMARY JUDGMENT STANDARD**

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

---

[36] Supplement Complaint, ¶ ¶ 17-18, Doc. 31.

133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

In this lawsuit, Plaintiff complains that he was denied a promotion purportedly on November 12, 2018, and that position was awarded to a white male with less experience.[37] He also complains that he received a demotion for a safety violation and alleges another white male had a safety violation and treated more favorably because he was not disciplined. Thus, he asserts a claim for race discrimination and retaliation for violating a federally protected right when he filed the 2013 Charge with the EEOC.

Defendant maintains that its decision to choose Plaintiff's co-worker for the STL position was not based on Plaintiff's race or in retaliation for his 2013 Charge. Defendant informs the Court that the interviewers had no knowledge about Pappion's 2013 Charge (or any other legal claim against the Company) at the time of the 2018 interview process.[38]

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-1(a)(1).

---

[37] *Id.*
[38] Defendant's exhibit H, Ardoin declaration ¶ 9; Defendant's exhibit D, Richard declaration ¶ 9; Defendant's exhibit C, Jimney declaration ¶ 9.

*Retaliation for not promoting to STL*

To establish a *prima facie* case of a retaliation claim, a plaintiff must show that (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Johnson v. Iberia Med. Ctr. Found.*, 2023 WL 1090167, at *7 (W.D. La. Jan. 27, 2023).

At the *prima facie* stage, a plaintiff can establish causation with temporal proximity alone; however, only when the two events are very close. *Richard v. La Dept Children & Fam. Services*, 2022 WL 3328978, at *6 (W.D. La. Aug. 11, 2022) (*citing* Zamora v. City of Houston, 798 F.3d 326, 335 (5th Cir. 2015)). Courts have generally held that a time lapse of four months with other evidence may be sufficient to establish the causal link at the summary judgment state. *Anderson v. LaSalle Mgt. Co. LLC*, 2023 WL 3952360, at *11 (W.D. La. June 12, 2023). However, a time period longer than four months may break the causal link. *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (citing *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)); see also *Hypolite v. City of Houston, Tex.*, 493 Fed. Appx. 597, 607 (5th Cir. 2012) (unpublished) (noting a nine months' time period was significantly longer than four months and not enough to establish a causal link for retaliation.)

Plaintiff's alleged protected activity is the 2013 Charge. For his claim of retaliation, Plaintiff suggests that he was denied a promotion on November 12, 2018, and that he was demoted for a safety violation that occurred on or about June 18, 2021.

In his Complaint Plaintiff alleges that he was denied other promotions. However, no summary judgment evidence has been submitted to support this claim. Defendant asserts that Plaintiff has failed to allege or identify these discrete promotion opportunities for which he allegedly applied and failed to receive. Defendant informs the Court that through discovery, in 2013 and in 2014, Plaintiff was denied two other promotions. However, Defendants contends that these denials are untimely and thus, not part of this lawsuit. See *Smith v. Gen. Motors, L.L.C.*, 2025 WL 1693524, at *3-4 (5th Cir. June 17, 2025) (alleged promotion denials are discrete actions and do not support a continuing action claim). As noted by Defendant, Plaintiff did not timely file an EEOC charge as to the discovered 2013 and 2014 promotion denial and the time for doing so has long passed. The Court agrees with Defendant that to the extent Plaintiff contends that any claims for the pre-2018 promotion denials must be dismissed as untimely.

Plaintiff asserts that he was retaliated against when he was not selected to the 2018 STL position because of his prior 2013 Charge.[39] Defendant argues that the time between the 2013 Charge and the 2018 promotion denial is too attenuated to support a causal connection. In other words, the protected activity and the alleged adverse employment decision/action are two far apart. The Court agrees. Here, there is a 5-year time span between the protected activity and the alleged retaliatory action, and as such, there is no causal connection. Thus, the Court finds that Plaintiff has failed to establish a *prima facie* case for retaliation.

---

[39] Complaint, ¶ 14, Doc. 1.

Even if the Court were to find a causal connection, the Court finds that Defendant had a legitimate, non-retaliatory reason for not promoting Plaintiff. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for not promoting the plaintiff. *Johnson*, 2023 WL 1090167, at *7. Then, if articulated, the burden shifts back to the plaintiff to establish that his protected activity constituted a "but-for cause of the adverse employment decision" by showing that the defendant's non-retaliatory justification is pretextual. *Id* at *7-8. A court must consider "numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id*. at *8. To survive a motion for summary judgment, a plaintiff must show a "conflict in substantial evidence" on this issue. *Id*. The Fifth Circuit has affirmatively rejected that temporal proximity alone can be sufficient proof to establish the but-for causation element. *Bardell v. Jefferson Par. Sch. Bd.*, 2024 WL 3408621, at *4 (5th Cir. July 15, 2024).

During the interview process, the interviewers scored both candidates and the co-worker received a better score through the interview process than Plaintiff.[40] Plaintiff suggests that he received the higher score and thus he was more qualified.[41] A review of the document relied upon by Plaintiff shows that the points assigned to Plaintiff were "higher," however, at the time of this interview process, the candidate with the lower score

---

[40] Defendant's exhibit B, Sona declaration, ¶ 17; Defendant's exhibit H, Ardoin declaration, ¶ 8 and att. exhibit 1; Defendant's exhibit D, Richard declaration, ¶ 7 and att. exhibit 1; Defendant's exhibit C, Jimney declaration, ¶ 7, and att. exhibit 1.
[41] Plaintiff's Memorandum, Doc. 121, p. 3 and Plaintiff's exhibit D, Doc. 121-5.

actually received the better score.[42]  The Court further notes that the interviewer made the following comments concerning Plaintiff:

- Lacked examples of team work
- Lacked desire to improve/do better
- Lack of leadership with answers
- Unsure if drive is there to make an impact
- Wants to make friends more than be a "leader"[43]

The Comments for the successful candidate who had the better score are:

- Strong; solid; leader; trainer/teaches
- Mentored under-dogs
- Big on team contribution and developing people
- Likes to ask "why" challenging things
- Good communication
- Understands importance of communication/leadership
- Leadership qualities; already qualified

The summary judgment evidence reflects that Plaintiff's co-worker who received the promotion was significantly better qualified than Plaintiff and received the better score. Additionally, the interviewers had no knowledge of Plaintiff's 2013 Charge at the time of the 2018 interview process.  The Court finds that even if Plaintiff could establish a *prima*

---

[42] Defendant's exhibit B, Sona declaration, ¶ 17; Defendant's exhibit H, Ardoin declaration, ¶ 8, Defendant's exhibit D, Richard declaration, ¶ 7; Defendant's exhibit C, Jimney ¶ 7.
[43] *Id.*

*facie* case of retaliation, Defendant had a legitimate, non-retaliatory reason for not promoting Plaintiff.

Having concluded that Plaintiff has failed to establish a *prima facie* case, and even if he had, Defendant had a legitimate, non-retaliatory reasons for not promoting Plaintiff, the Court finds no justification for addressing whether Defendant's reasons for not promoting Plaintiff were pretextual.

*Retaliation for 2021 disciplinary action and demotion*

Plaintiff complains that he was retaliated against by Defendant when he was disciplined and demoted for a safety violation. As noted above, during the housekeeping event when Plaintiff threw two, two-by-three-foot pieces of metal dog ear covers from a 60-foot high structure. Defendant found this to be a severe safety violation. Plaintiff alleges that his co-worker also threw something off the ESP structure during the housecleaning event but was not disciplined. Plaintiff attempts to argues that this was not only racial discrimination but also an act of retaliation.

Defendant has submitted summary judgment evidence that the co-worker's conduct was not similar to that of Plaintiff's conduct and that disciplinary action as to the co-worker was not warranted. The investigators determined that the co-worker tossed a bag of fire blankets from roughly ten feet above ground and the co-worker had spotters in place to block all foot traffic from the area.[44] No safety violation was committed because the co-worker used a recognized and appropriate safeguard.[45]

---

[44] Defendant's exhibit B, Sona declaration, ¶ 24; Defendant's exhibit E, Holland declaration, ¶ 10.
[45] *Id.*

Page **12** of **16**

As found above, the 2013 Charge has no causal connection to Plaintiff's allegation that Defendant retaliated against him by demoting him in 2021 for a safety violation.

*Race discrimination*

To establish a *prima facie* case for discrimination, Plaintiff must show that he: (1) was a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment action; and (4) others outside his class were treated more favorably. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

If a plaintiff can establish a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Guillory v. Dwight*, 2024 WL 326651, at *6 (W.D. La. Jan. 29, 2024) (citing *Price v. Federal Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)). The defendant's burden is one of production rather than persuasion and should not incorporate a credibility assessment. *Williams v. Louisiana*, 2017 WL 359218, at *6 (W.D. La. Jan. 24, 2017) (Citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142-143, 120 S.Ct. 2097, 2106 (2000)). In analyzing the defendant's reasoning, the Fifth Circuit has cautioned that employment discrimination laws are not intended to transform courts into personnel managers. *Inocencio v. Montalvo*, 774 Fed. Appx. 824, 833 (5th Cir. 2019) (unpublished); *see also Lawson v. PHC Minden, L.P.*, 2018 WL 4343420, at *6 (W.D. La. Sept. 11, 2018). The defendant does not have to make proper decisions, only nondiscriminatory ones. *Jordan v. Cleco Corp.*, 2013 WL 673438, at *4 (W.D. La. Feb. 22, 2013), *aff'd,* 542 Fed. Appx. 337 (5th Cir. 2013) (unpublished). Moreover, courts have declined to evaluate the validity of the defendant's decision at any stage of the case. *Heard v. United Parcel Serv., Inc.*, 2012 WL 399213, at

*7 (W.D. La. Feb. 7, 2012). Then, if the defendant provides a legitimate, nondiscriminatory reason for its decision, the burden shifts back to the plaintiff to prove that: (1) the defendant's reason was merely a pretext or (2) the employer's reason, while true, is not the only reason for its action and another "motivating factor" is plaintiff's protected characteristic. *Johnson v. Iberia Med. Ctr. Found.*, 2023 WL 1090167, at *6 (W.D. La. Jan. 27, 2023); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2011).

Plaintiff alleges and argues that he was discriminated against based on his race when he was not promoted to the STL position. Plaintiff's co-worker, a white male, was promoted to the STL position. Plaintiff suggests, without supportive evidence, that he had a better score than his co-worker. Defendant has submitted summary judgment evidence that has not been disputed, other than in arguments, that Plaintiff had a lower score than his co-worker.[46]

Additionally, Plaintiff testified that due to his own extended absences, it is possible that the co-worker had more on site, in-the-field operational experience in the LCR than Plaintiff as of 2018.[47] Also, Plaintiff's co-worker began his employment a year and a half after Plaintiff, and there is no record of any extended leaves.[48]

The Court has reviewed the interviewer's scoring of the two candidates and as noted above, Plaintiff's co-worker not only had a better score, the undisputed evidence shows that the co-worker was better qualified, whereas the comments concerning Plaintiff reflect

---

[46] Defendant's exhibit B, Sona declaration ¶ 17; Defendant's exhibit H, Ardoin declaration ¶ 8; Defendant's D, Richard declaration ¶ 8; Defendant's exhibit C, Jimney ¶ 8.
[47] Defendant's exhibit B, Sona declaration, ¶ ¶ 10, 15; Defendant's exhibit A, Pappion deposition, p. 265-269.
[48] Defendant's exhibit B, Sona declaration ¶ 15.

that he was not qualified for this position.[49] The Court finds that Plaintiff has failed to establish a *prima facie* case of racial discrimination regarding Plaintiff's assertion that he was discriminated against by not being promoted to the STL position.

Even if Plaintiff could establish a *prima facie* case of racial discrimination, the Court further finds that based on the undisputed summary judgment evidence, Defendant had a legitimate, non-discriminatory reason for its decision to promote Plaintiff's co-worker. The record clearly indicates that Plaintiff was not qualified for the position, he had multiple instances of absenteeism, and he lacked leadership qualities. As such, Defendant has articulated a reasonable and supported non-discriminatory reason for its selection decision.

Additionally, Plaintiff has not demonstrated that Defendant's proffered explanation was false or unworthy of credence, or that Defendant was clearly better qualified than his co-worker. As such, Plaintiff has not established with summary judgment evidence that Defendant's decision not to promote Plaintiff was pretext.

*Racial discrimination as to the disciplinary action*

Finally, Plaintiff complains that Defendant racially discriminated against him by the disciplinary action toward him for throwing a three-to-five-pound, 2 foot by 3 foot metal object from a 60-foot structure. Plaintiff asserts that this disciplinary action resulted in Plaintiff's demotion and a reduction in his hourly wage.

Plaintiff argues that this was discrimination because Plaintiff's co-worker made a similar action but was not disciplined.

---

[49] Defendant's exhibit B, Sona declaration, ¶ 17; Defendant's exhibit H, Ardoin declaration, ¶ 8, Defendant's exhibit D, Richard declaration, ¶ 7; Defendant's exhibit C, Jimney ¶ 7.

Defendants have summitted summary judgment evidence that is undisputed to show that the co-worker's action was not similar, was not a safety violation, and was compliant with Defendant's safety protocol. As mentioned above, the investigators determined that the co-worker tossed a bag of fire blankets from roughly ten feet above ground and the co-worker had spotters in place to block all foot traffic from the area.[50] No safety violation was committed because the co-worker used a recognized and appropriate safeguard.[51] Accordingly, the Court finds that there as no discrimination here as to Defendant's disciplinary action of Plaintiff.

## CONCLUSION

For the reasons explained herein, the Court will deny the Motion for Summary Judgment (Doc. 121) filed by Plaintiff Clifton J. Pappion and will grant in its entirety the Motion for Summary Judgment (Doc. 122) filed by Defendant Phillips 66 Company and dismiss all of Plaintiff's claims with prejudice.

**THUS DONE AND SIGNED** in Chambers on this 16th day of December, 2025.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[50] Defendant's exhibit B, Sona declaration, ¶ 24; Defendant's exhibit E, Holland declaration, ¶ 10.
[51] *Id.*